*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JASON BROWN,

*Petitioner-Appellee,*

No. 05-1320

*v.*

CARMEN PALMER,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72303—Arthur J. Tarnow, District Judge.

Argued: February 2, 2006

Decided and Filed: March 14, 2006

Before: MERRITT, MARTIN, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL APPELLATE DIVISION, Lansing, Michigan, for Appellant. Robert S. Lewis, THOMPSON HINE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL APPELLATE DIVISION, Lansing, Michigan, for Appellant. Robert S. Lewis, Jack Kurt Denkewalter, THOMPSON HINE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Jason Brown was convicted in a Michigan state court of armed robbery and carjacking under an aiding and abetting theory. After exhausting his state-court remedies, he sought a writ of habeas corpus in the federal district court. The district court granted Brown an unconditional writ of habeas corpus on the basis that the evidence was insufficient to prove beyond a reasonable doubt that Brown aided and abetted the crimes committed by the unidentified gunman. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On January 25, 1999, Jerome Campbell drove his 1984 Buick Regal to a BP gas station in Detroit, Michigan at approximately 1:30 a.m. Campbell's friends, William Clemons and Bernard Turner, rode with him. The three men noticed that another man, later determined to be Brown, was

parked nearby in a Chevrolet Monte Carlo. Shortly after arriving, Campbell and Clemons entered the gas station's store while Turner stayed outside to inspect a radiator leak coming from Campbell's Buick. After exiting the store, Campbell and Clemons noticed another man walk out of the store and enter Brown's Monte Carlo. Brown then pulled up to a gas pump. His unidentified passenger promptly exited Brown's car and began walking toward Campbell's Buick.

The unidentified man shouted something to Campbell and Clemons and then pointed a gun at Turner, who was still attending to the radiator leak. As Turner ran away, the gunman fired shots in his direction before jumping into Campbell's Buick and driving off. According to Campbell, Brown stared at the victims from his car while the gunman fired the shots and drove Campbell's Buick away from the gas station. Campbell testified that Brown then attempted to drive off himself, but that his tires skidded in the snow.

After the gunman left, Campbell ran over to Brown's car and punched Brown in the face through the open driver's-side window. Brown protested, claiming that he had met the gunman just minutes before the carjacking, when Brown offered to give him a ride. Campbell, with the help of Clemons, proceeded to pull Brown out of his car, leave him in the parking lot, and drive Brown's Monte Carlo to the police station to file a report. Brown eventually received a ride home from a passing motorist, and he never attempted to retrieve his Monte Carlo from the police station.

After determining that Brown was the owner of the Monte Carlo driven to the police station by Campbell and Clemons, the Detroit police arrested Brown. The gunman was never located. Brown was charged as an aider and abettor to armed robbery, carjacking, and attempted murder. Although the state trial court initially dismissed the case for lack of sufficient evidence to support a conviction, the Michigan Court of Appeals reversed and reinstated the charges. At trial, the prosecutor argued that Brown served as a lookout and as a potential getaway driver for the unidentified gunman. The jury subsequently convicted Brown of armed robbery and carjacking, but acquitted him of attempted murder. Brown was sentenced to a range of 130 months to 216 months of imprisonment.

In his appeal to the Michigan Court of Appeals, Brown claimed that: (1) there was insufficient evidence to prove that he aided and abetted the unidentified gunman in the armed robbery and carjacking, (2) the trial court committed reversible error by "engaging in advocacy which departed from the required role of neutrality," (3) there was plain error involving "improper vouching" by the prosecutor, and (4) Brown's sentence was improperly calculated. The Michigan Court of Appeals affirmed Brown's convictions but remanded the case for resentencing. Brown then applied for leave to appeal to the Michigan Supreme Court, which denied his application. On remand, the Michigan trial court sentenced Brown to a range of 60 to 120 months of incarceration.

In a pro se petition, Brown subsequently sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that there was: (1) insufficient evidence to prove that he aided and abetted the unidentified gunman, (2) reversible error based on the trial court's "depart[ure] from neutrality," and (3) "improper vouching" by the prosecutor. The district court granted Brown an unconditional writ of habeas corpus based upon Brown's first claim, concluding that there was insufficient evidence for any reasonable juror to find beyond a reasonable doubt that Brown had committed the charged offenses. On appeal, the state argues that the district court impermissibly substituted its judgment for that of the state court and failed to afford proper deference to the state court's findings of fact.

## II. ANALYSIS

### A.        Standard of review

We review a district court's legal conclusions de novo, but will set aside its factual findings only if clearly erroneous. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). The standard of review for state-court determinations, however, is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. § 2254(d). AEDPA provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

A state-court decision is considered contrary to federal law "if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The application of federal law is unreasonable where "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* When assessing unreasonableness, "a federal habeas court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Furthermore, factual findings made by the state court are presumed correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

### B.        The district court's grant of habeas corpus was not erroneous

The state argues on appeal that the district court impermissibly substituted its judgment for that of the state court when it granted Brown's writ of habeas corpus on insufficiency-of-the-evidence grounds. A district court may grant a writ of habeas corpus based on insufficiency of the evidence only where it finds that, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

To support a conviction for aiding and abetting a crime under Michigan law, the state must prove beyond a reasonable doubt that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended it when the defendant gave aid or encouragement. *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (holding that the evidence was sufficient to prove that the defendant aided and abetted an armed robbery beyond a reasonable doubt). The phrase "aiding and abetting" includes all words or actions by the defendant that might support, encourage, or incite the

commission of the crime. *People v. Palmer*, 220 N.W.2d 393, 397 (Mich. 1974) (holding that the evidence was sufficient to prove that the defendant aided and abetted an involuntary manslaughter). Although intent is a required element for the aiding-and-abetting offense, intent may be inferred from circumstantial evidence. *People v. Wilson*, 493 N.W.2d 471, 476 (Mich. 1992) (holding that the evidence was sufficient to prove that the defendant aided and abetted a felonious sexual assault). But mere presence, or even knowledge, that a crime is about to be committed is insufficient to prove guilt under an aiding-and-abetting theory. *Id.*

On appeal, the state relies on the following facts to argue that "the jury reasonably concluded from the circumstantial evidence presented . . . that Petitioner intended to give aid or encouragement to the principal in committing the armed robbery and carjacking": (1) Brown was present before and during the carjacking, (2) he and the perpetrator were in the car together before the perpetrator committed the offenses, (3) he stared at the victims while the perpetrator fired the shots, (4) he never got gas even though he was parked near a gas pump, (5) he attempted to flee as soon as the perpetrator drove off in the car, and (6) he failed to contact the police to retrieve his car. These facts were also relied on by the Michigan Court of Appeals, which held that intent could be inferred from the above circumstantial evidence.

Taking this evidence in the light most favorable to the state, as we must do pursuant to AEDPA, 28 U.S.C. § 2254(e)(1), the evidence clearly demonstrates that Brown was present at the scene and had some acquaintance with the perpetrator. Beyond that, however, the evidence pointing to Brown's guilt becomes quite speculative.

In claiming that the district court impermissibly substituted its judgment for that of the state court, the state primarily relies on the standard of review set forth in AEDPA. It does so without attempting to distinguish a line of cases decided by this court pre-AEDPA in which defendants were granted habeas corpus relief on sufficiency-of-the-evidence grounds. One such case is *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 1981). In *Fuller*, this court distinguished between "reasonable speculation" and sufficient evidence. The petitioner in *Fuller* was suspected of acting as a "lookout" for another man who committed arson by throwing a Molotov cocktail at the victims' home. *Id.* Although the prosecutor presented evidence that Fuller "stood guard," "turned his head from side to side more than twice," and ran away with the perpetrator after the arson, the *Fuller* court held that this evidence created reasonable speculation but was not sufficient for a rational jury to find beyond a reasonable doubt that he aided and abetted the arson. *Id.* Because there was no evidence that Fuller intended to burn the victims' home, knew that the perpetrator intended to burn it, or assisted the perpetrator in creating the Molotov cocktail, the *Fuller* court granted the writ of habeas corpus. *Id.*

This court also granted a writ of habeas corpus based on insufficiency of the evidence in *Hopson v. Folsz*, No. 86-1155, 1987 WL 37432 (6th Cir. May 20, 1987) (unpublished). In *Hopson*, the petitioner had been convicted of aiding and abetting first degree murder based on evidence that he and the victim had argued shortly before the victim was killed, that he was present when the victim was killed, and that he may have known that the perpetrator intended to harm the victim. *Id.* at *2. Despite this evidence, the *Hopson* court held that the petitioner's "animus towards the victim[] cannot be construed as providing encouragement to the principal," and that the evidence was "insufficient to establish beyond a reasonable doubt that he took conscious action to aid in the shooting." *Id.*; *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989) (reversing the district court's dismissal of a habeas corpus petition where the facts "appear[ed] to be identical" to those in *Hopson*).

The above cases are admittedly pre-AEDPA, but their holdings that distinguish reasonable speculation from sufficient evidence are still persuasive in establishing that the state court's application of federal constitutional law as set forth in *Jackson*, 443 U.S. at 319, was objectively

unreasonable. In the present case, the district court relied on *Fuller* and *Hopson* in granting Brown's petition. Although the facts viewed in the light most favorable to the state may have created "reasonable speculation" that Brown aided and abetted the carjacking and armed robbery, the district court highlighted the absence of facts demonstrating that Brown in fact provided assistance or encouragement to the perpetrator. The state offered no evidence that Brown had ever met the gunman prior to arriving at the gas station, that Brown possessed a weapon or handed one to the gunman, or that Brown knew that the gunman was going to commit a robbery and carjacking.

As demonstrated by *Fuller* and *Hopson*, being present at the scene of the crime and having a brief relationship with the carjacker are insufficient facts to establish beyond a reasonable doubt that Brown aided and abetted the latter individual. The *Fuller* court also held that the evidence was insufficient to support Fuller's conviction even though he ran from the scene of the crime with the perpetrator—behavior arguably more suspicious than Brown's actions in the present case. *Fuller*, 662 F.2d at 424. This behavior is distinguishable from the inference of guilt that arises when one flees from a law enforcement officer. *See United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989) (holding that evidence of flight from law enforcement is admissible to prove guilt). We also note that Brown's attempt to leave the scene is fully consistent with his desire to avoid a confrontation with Campbell and his friends, who in fact assaulted Brown and commandeered his car to drive to a nearby police station. Furthermore, the record does not establish that Brown knew where his Monte Carlo had been taken, so the fact that he did not come to retrieve it is equivocal at best.

We further note that the state offered no evidence to counter Brown's testimony that he did not know the perpetrator before offering him a ride on the night in question and that he had no prior relationship with the victims. Moreover, this court in *Hopson* upheld a grant of habeas corpus on insufficiency-of-the-evidence grounds where the evidence showed even greater contact by the defendant with both the shooter and the victim than was established here. *Hopson*, 1987 WL 37432, at *2. Although the state relies on evidence demonstrating that Brown "stared at the victims," never pumped gas at the gas station, attempted to flee following the gunshots, and failed to contact the police to retrieve his car, none of this evidence suggests that Brown assisted or encouraged the gunman in the commission of the armed robbery and carjacking or that Brown intended for the gunman to commit the offenses—both necessary elements for aiding and abetting under Michigan law.

Contrary to the state's assertion, the district court did not impermissibly substitute its own judgment for the that of the state court or fail to afford the proper level of deference. The district court acknowledged the deference required by AEDPA and then determined that the state court's application of *Jackson v. Virginia,* 443 U.S. at 319, was objectively unreasonable. This case in fact presents less evidence tying Brown to the offenses than was present in either *Fuller* or *Hopson.* As a result, we find no error in the district court's grant of habeas corpus.

### III. CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.