*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0422p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SAEJAR DEONTE PARKER,

    *Petitioner-Appellee,*

  *v.*

              No. 06-2419

PAUL RENICO, Warden,

    *Respondent-Appellant.*

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-71106—Avern Cohn, District Judge.

Argued: September 18, 2007

Decided and Filed: October 17, 2007

Before: COLE and COOK, Circuit Judges; and MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Andrew N. Wise, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Raina I. Korbakis, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Andrew N. Wise, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellee.

---

## OPINION

---

  COOK, Circuit Judge. A Michigan jury convicted Saejar Deonte Parker of the twin crimes of being a felon in possession of a firearm and felony-firearm. Mich. Comp. Laws §§ 750.224f, 750.227b. After exhausting his state-court remedies, Parker sought a writ of habeas corpus in federal district court, claiming that insufficient evidence supported the jury's conclusion that he constructively possessed a firearm. Because Parker has shown that the state courts unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), we affirm the district court's grant of the petition.

---

[*]The Honorable Richard Mills, United States Senior District Judge for the Central District of Illinois, sitting by designation.

1

I

Parker rode in a white four-door Pontiac Grand Am with three men who, as the jury concluded, conspired to murder Fred Stewart ("the victim"). Jack Tillman drove the car, Elijah Tillman rode in the front passenger's seat, Terrence Williams sat in the backseat on the passenger's side, and Parker sat in the backseat on the driver's side. As the victim sat in his wife's car in his driveway drinking a beer sometime after 2 a.m., a man—either Elijah Tillman or Williams—approached the car and fired several shots into it, four of which struck the victim.[1] The shooter reentered the Grand Am and drove off.

Michigan State Troopers Craig Tuer and Kenneth Campbell were on DUI patrol in their marked cruiser when they heard the gunshots. Soon after, they saw the Grand Am driving erratically; suspecting a drunk driver, they followed. When the troopers activated the cruiser's sirens and flashers, a chase unfolded as the Grand Am increased speed, at times in excess of 60 miles per hour, and tried to evade the police. During the chase, the officers saw a door on the driver's side open briefly: Tuer recalled two openings, while Campbell observed only one. Narrating a video of the chase, the officers spoke generally about "a" or "the" driver's side, but when asked on cross-examination, Officer Campbell identified the opening door as the driver's door. Based on the high-crime area they were patrolling, Officer Campbell assumed that the person opening the door was tossing drugs out of the car.

The chase ended when the Grand Am crashed into a tree and then a telephone pole. The driver, Jack Tillman, opened his door and took off running, and Officer Campbell chased him. Officer Tuer saw Elijah Tillman exiting the front passenger's door, Williams crawling out the rear passenger's side window, and Parker "moving in the compartment of the vehicle also coming in the direction of the driver's side door." Tuer ordered the men to stay in the car, and Parker complied immediately. When Parker later exited the Grand Am on the passenger's side, he sat on the ground and, in a voice audible on the video, repeatedly told Tuer that he intended to follow his orders.

Tuer struggled to subdue both Elijah Tillman and Williams. Officer Chad Foerster soon arrived on the scene and assisted Tuer in securing the two men. During the struggle, as Foerster later testified, Parker protected him from Elijah Tillman: as Tillman reached into the car to pick up a gun from the front floorboard, Parker pushed his hand away.

A later search of the car yielded two pistols, one on the front passenger side's floor and one on the passenger side's backseat. Police also found a Luger pistol on the ground along the chase route off to the Grand Am's passenger's side. *See supra* n.1.

Michigan charged the quartet with numerous crimes, including conspiracy to commit murder, assault with intent to commit murder, felon in possession of a firearm, and felony-firearm. At the close of evidence, Parker moved for a directed verdict on each of those counts. The trial court granted his motion as to the conspiracy and assault counts, concluding that there was "absolutely no evidence whatsoever that Mr. Parker participated in the assault with intent to murder or that he agreed to conspire in that fact, nor is there any evidence that he was an aider and abettor, mere presence being insufficient." As for the possession counts, the court denied his motion "for the

---

[1]The evidence at trial suggested that Williams shot the victim, as his footprints matched those found near the spent shell casings left from the shooting. The casings matched the bullets discharged from a Luger pistol found on the ground along the right side (passenger side) of the chase that ensued after the shooting. Nevertheless, the jury did not convict Williams on an assault charge predicated on the shooting. As the Michigan Court of Appeals observed, "Likely, the prosecutor failed to persuade the entire jury beyond a reasonable doubt that Williams, rather than Elijah Tillman, actually shot the victim." *People v. Tillman*, Nos. 245442, 245443, 245894, 2004 WL 1459559, at *4 (Mich. Ct. App. June 29, 2004) (per curiam).

reason that the firearms were in plain sight," explaining that the jury "could find that he had constructive, if not physical custody of a weapon." The jury convicted Parker of the possession charges, and Parker was sentenced to 28 to 90 months in prison on the felon-in-possession charge and a consecutive 2-year sentence for the felony-firearm charge.

When Parker appealed, the Michigan Court of Appeals rejected his sufficiency-of-the-evidence challenge in a single paragraph:

> Parker argues that his conviction for felon in possession was not supported by sufficient evidence because the prosecutor merely demonstrated that he was in the presence of firearms, not that he carried one. We disagree. The police found another pistol jammed in a locked position on the backseat where Williams and Parker sat, but the evidence suggested that Williams carried a Luger, used only the Luger in the shooting, and threw the Luger out his window during the chase. The evidence also showed that a driver's side door repeatedly opened during the chase, suggesting that Parker attempted to dispose of the gun or use it against his pursuers. The pursuing officer also testified that Parker initially attempted to escape through the driver's side door, but abandoned the attempt when the officer dragged Williams to the ground. From this evidence, a rational jury could reasonably conclude that Parker possessed the pistol at some point during the evening's events.

*Tillman*, 2004 WL 1459559, at *6 (internal citations omitted).

Judge Hoekstra dissented:

> I respectfully dissent from that part of the majority opinion that holds that the prosecution presented sufficient evidence to convict defendant Parker of felon in possession of a firearm. From my review of the evidence, I conclude that other than mere presence, the prosecution failed to produce any evidence to show that defendant possessed, constructively or otherwise, the weapons associated with this incident. A person's mere proximity to contraband is insufficient, by itself, to prove possession.
>
> In this case, the inability of the prosecution to establish defendant Parker's involvement in the principal charges of assault with intent to murder or conspiracy to commit murder, or to show any connection to the weapons other than mere presence and the possibility of access by virtue of his presence, in my judgment causes a finding of guilt on the charge of felon in possession of a firearm to be unsustainable.

*Id.* (Hoekstra, J., dissenting) (internal citations and footnote omitted).

The Michigan Supreme Court denied Parker leave to appeal. *People v. Parker*, 690 N.W.2d 114 (Mich. 2004) (table). After the United States District Court for the Eastern District of Michigan granted Parker's petition for writ of habeas corpus, *Parker v. Renico*, 450 F. Supp. 2d 727 (E.D. Mich. 2006), Michigan appealed, arguing that the district court improperly substituted its judgment for that of the state court.

## II

We review de novo the district court's decision to grant or deny habeas corpus relief. *Wilson v. Mitchell*, No. 03-3362, slip op. at 5 (6th Cir. Aug. 15, 2007); *Joseph v. Coyle*, 469 F.3d 441, 449 (6th Cir. 2006). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state courts ruled in a way contrary to,

or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); *Varner v. Stovall*, No. 06-1255, slip op. at 2 (6th Cir. Sept. 11, 2007). A state-court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. When assessing unreasonableness, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

As framed by AEDPA, the issue is whether the district court erred in concluding that the Michigan Court of Appeals unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, habeas corpus relief is appropriate based on insufficient evidence only where the court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319. The law therefore commands deference at two levels in this case—first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA.

Where we consider the jury's verdict, we do so "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16; *see also Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006). To support a conviction on the felon-in-possession charge under Michigan law, the state had to prove beyond a reasonable doubt that (1) Parker was convicted of a felony; (2) Parker possessed a firearm; and (3) at the time of possession, less than three or five years, depending on the underlying felony, passed since Parker completed his previous term of incarceration, satisfied all conditions of probation and parole, and paid all fines. Mich. Comp. Laws § 750.224f. The elements of felony-firearm are that Parker possessed a firearm while committing, or while attempting to commit, a felony offense.[2] Mich. Comp. Laws § 750.227b.

Parker challenges only the sufficiency of the evidence with regard to the possession element of each crime. Possession of a firearm under Michigan law can be either actual or constructive, *People v. Hill*, 446 N.W.2d 140, 143 (Mich. 1989); here, the relevant form is constructive. "As with the federal rule, a person has constructive possession if there is proximity to the [weapon] together with indicia of control."[3] *Id.* (citing *People v. Davis*, 300 N.W.2d 497 (Mich. Ct. App. 1980)). This statement in *Hill* demonstrates that Michigan courts construe their constructive possession rules to

---

[2] The Michigan Supreme Court, relying on the United States Supreme Court's dictate that the Double Jeopardy Clause does not proscribe a legislature from cumulatively punishing a particular crime, *see Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984), held that the Michigan legislature intended a cumulative punishment in these instances. *People v. Calloway*, 671 N.W.2d 733, 735 (Mich. 2003).

[3] The *Hill* court continued, "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." 446 N.W.2d at 143. This language could lead one to conclude that Michigan employs a broader conception of constructive possession than the federal law from which it draws. Mere knowledge of a reasonably accessible weapon would cover practically any instance where a felon and gun occupied the same room. Such a rule would eviscerate the "indicia of control" element required, as the state concedes, by the previous sentence.

As applied, "reasonable access" is best calibrated to instances where a defendant commits a crime emboldened by a firearm available, but not in hand. *See People v. Davis*, 300 N.W.2d 497, 499–500 (Mich. Ct. App. 1980) (cited with approval in *Hill*; finding constructive possession when defendant raped the victim while his rifle rested six feet away); *see also People v. Terry*, 335 N.W.2d 116 (Mich. Ct. App. 1983) (applying "reasonable access" to drug sale); *Cannon v. Lafler*, No. 06-1259, 2007 WL 2728547 (6th Cir. Sept. 19, 2007) (applying Michigan law and finding constructive possession where a jury could conclude that the defendant kept a gun close by to protect drugs). In such cases, the court's "reasonable access" gloss prevents the absurd result of requiring that the defendant hold the gun at the very moment of the crime, when the weapon so obviously facilitated the crime.

mirror those of federal law, under which proximity alone never suffices.[4]  As Michigan's highest court recognizes, the "indicia of control" element requires something more than a defendant's mere proximity to establish constructive possession. *People v. Wolfe*, 489 N.W.2d 748, 757 (Mich. 1992); *see also People v. Williams*, 469 N.W.2d 4, 6 (Mich. Ct. App. 1991) ("Something more than mere association must be shown to establish joint possession.  The prosecution must show an additional independent factor linking the defendant with the [contraband].").  We described this "something more" in *United States v. Craven*, a case relied on in *Hill*, when we explained that "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."  478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1997).  Applying these principles in *Wolf*e, the Michigan Supreme Court assessed whether sufficient evidence supported the defendant's conviction for firearm possession when police found a gun and the defendant in an apartment where he sold drugs.  489 N.W.2d at 750.  As the court explained, "Except for the presence of defendant Wolfe in the apartment, there was no evidence that he had any role in obtaining the gun or in making it available during commission of the underlying felony."  *Id.* at 757.  Comparing Wolfe to his co-defendant, Rogers, who did constructively possess the shotgun, the court explained, "Unlike Rogers, Wolfe did not have a shell in his pocket that could be used in the shotgun.  Likewise, there was no evidence that Wolfe attempted to use the gun, or even to reach for it, when the police entered the apartment."  *Id.*  In this analysis, the Michigan Supreme Court found no indicia of control beyond Wolfe's presence, awareness, and ability to reach for the weapon.

Therefore, in assessing whether the evidence against Parker sufficed for a rational jury to convict him of possessing a firearm beyond a reasonable doubt, *Jackson*, 443 U.S. at 319, we view the facts through the usual constructive-possession lens of "indicia of control."[5]

Michigan identifies several factors in support of the jury's verdict: (1) Parker fled from law enforcement; (2) the officers saw an opening driver's side door; (3) the gun was within Parker's reach and in plain sight; and (4) as Williams exclusively used the Luger, Parker must have used the second gun in the backseat.  Beyond Parker's proximity to the firearm, however, "indicia of control" gleaned from this evidence is speculative at best.  *Brown*, 441 F.3d at 351–52.

*Parker's Flight*.  Michigan first contends that Parker's efforts to exit the crashed Grand Am support the conclusion that he possessed the firearm, relying on the theory that evidence of flight from law enforcement is probative of guilt.  But the state's position suffers from both factual and legal infirmities.  First, our reading of the trial transcript indicates that Parker's movement from the back to the front seat and brief efforts to exit the car fall short of the sort of flight suggestive of guilt.  Again, after the car crashed at high speed into a tree and then a telephone pole, the driver opened the front door and fled, Williams began climbing out the window, Elijah Tillman got out of the front

---

[4] *See, e.g.*, *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc) ("'Presence *alone*' near a gun . . . does not 'show the requisite knowledge, power, or intention to exercise control over' the gun to prove constructive possession." (quoting *United States v. Birmley*, 529 F.2d 103, 107–08 (6th Cir. 1976))); *United States v. Newsom*, 452 F.3d 593, 609 (6th Cir. 2006) ("[D]efendant's mere presence in a car where a gun is found and proximity to a gun are insufficient proof of constructive possession."); *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003) ("Although 'mere proximity' to a gun is insufficient to establish constructive possession, evidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice." (internal quotation marks omitted)); *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (finding insufficient evidence of possession where two guns were found in the trash near Beverly, despite one of the guns carrying Beverly's fingerprint).

[5] We also note that the trial court instructed the jury opaquely on what constructive possession means: "The term 'possess' means to exercise control or authority over something at a given time.  Possession may be actual or constructive, and may be joint as well as exclusive."

door, and police observed Parker moving from the back to the front, as if to exit from the driver's side door. Parker stopped immediately, however, when the officers ordered all of them to remain in the car. Parker later exited the car and repeatedly stated his cooperative intentions: As Trooper Tuer recounted, "Mr. Parker definitely made it clear that, hey . . . I understand, you know, I'm right here, refers to me as Officer, refers to me as Sir, so he made it quite clear that . . . he was not part of the problem any longer." And as Officer Foerster described it, "Mr. Parker, you can hear him . . . in the video saying I'm not doing nothing, sir, I'm right here. He at no time resisted." Nevertheless, the Michigan Court of Appeals characterized Parker's "escape efforts" more stridently than the testifying officers: "The pursuing officer also testified that Parker initially attempted to escape through the driver's side door, but abandoned the attempt when the officer dragged Williams to the ground." *Tillman*, 2004 WL 1459559, at *6. Later, as Elijah Tillman struggled with a police officer, Parker pushed Tillman's hand away as Tillman reached for a gun on the car's floor. By all accounts, after his short-circuited effort to exit the Grand Am, a smoking, badly damaged wreck following its impact with a tree and pole, Parker did not resist and even protected the officers by thwarting Tillman's efforts.

Second, the state's reliance on *United States v. Dillon*, 870 F.2d 1125 (6th Cir. 1989), also undermines its position. In that case, we explained that evidence of flight is admissible to prove guilt but noted that both we and the United States Supreme Court are skeptical of its probative value. *Id.* at 1126 ("[W]e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." (quoting *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963))). As the Supreme Court colorfully explained, it is not "true as an accepted axiom of criminal law that the wicked flee when no man pursueth, but the righteous are as bold as a lion." *Wong Sun*, 371 U.S. at 483 n.10 (internal quotation marks omitted). While this appeal does not present an evidentiary challenge to the trial court's admitting evidence that Parker initially tried to exit the Grand Am, these principles rebut Michigan's blanket assertion that flight proves guilt. Even if one considers Parker's moving from the back of the car to the front and attempting to exit "flight," its probative value is exceedingly low; it says very little about his having previously held a gun and does not support the "indicia of control" required to find constructive possession beyond a reasonable doubt.

*The Opening Door*. Another factor the state stresses to support the jury's verdict is the officers' observation that a driver's side door repeatedly opened during the high-speed chase, presumably to fire upon the police or to throw the gun away. The state reasons that Parker must have opened his door because Jack Tillman was driving, but contrary to the state's position and the Michigan Court of Appeals' recounting of the facts, the testimony does not support these inferences. Trooper Tuer testified to seeing "the door open[]" and then open again, and identified the door as being on the driver's side. Officer Campbell testified that "as soon as the siren was activated the driver side door of the vehicle open[ed] slightly, then it shut right back again." He thought at the time, given the area, that the suspect was discarding drugs, not pointing a gun at him. He later testified that he saw the door open only once and clarified on cross-examination that it was the driver's door.[6] Thus, the only testimony specifically identifying the open door pointed to the driver's door, not Parker's.

*Within Arm's Length and In Plain Sight*. The state also insists that the firearm's being "within an arm's reach" of Parker and "in plain sight" supports the conclusion that he constructively possessed the gun, but this is just proximity by another name. Presence near a firearm, without more, does not suffice to prove possession. *See Wolfe*, 489 N.W.2d at 757. The state trial court

---

[6]The state and Michigan Court of Appeals leave out this admission, and the Joint Appendix omits the page that answers the question, "Am I correct when I heard you, Trooper Campbell, say that it was the driver's side front door that you saw open on Elizabeth?" The officer replied, "Yes." (State Trial Tr. vol. 5, 44–45, Oct. 24, 2002; J.A. 125–26).

made a similar mistake in denying Parker's directed-verdict motion on the possession charges "for the reason that the firearms were in plain sight."

*Williams's Luger.*  Finally, the state points us to evidence suggesting, as the Michigan Court of Appeals explained, that Williams, the other backseat occupant, "carried a Luger, used only the Luger in the shooting, and threw the Luger out his window during the chase." *Tillman*, 2004 WL 1459559, at *6. In other words, as Williams was the shooter and used a Luger, the other gun in the backseat must have been Parker's. This constructive-possession-by-elimination chain of reasoning would have more force had Parker been convicted on *any* of the substantive crimes charged. Had the state introduced any evidence suggesting that Parker was involved in the conspiracy to commit murder, deducing that he would have likely been armed would be reasonable. But the trial court's directed verdict for Parker on the substantive crimes attenuates the assumption that a second gun on the backseat necessarily belonged to him.

Even making that leap, it is far from clear that Williams possessed the Luger—the jury acquitted him on the assault charge, suggesting that Tillman possessed two guns and used the Luger to shoot the victim, and that the backseat gun belonged to Williams. Admittedly, this observation has limited value given the evidence that Williams's footprints matched those near the shell casings, *supra* n.1, but it is consistent with the police finding the weapon attributed to Parker on the passenger's side of the backseat, where Williams had been sitting and where he exited the car through the window. What this observation *does* show is the exceedingly speculative nature of the inference that because Williams possessed the Luger, Parker must have possessed the backseat gun.

The state attempts to buttress its argument by pointing out that constructive possession can be joint—that is, both men could possess the weapon. In support, it quotes *Hill* for the proposition that Michigan "recognize[s] the theory of joint firearm possession if the evidence suggests two or more defendants acting in concert." 446 N.W.2d at 143. The state then asserts, with no additional support, that "the evidence presented in this case suggests that the men acted in concert." But, as Parker's directed-verdict motion prevailed, the trial court judge obviously found *nothing* to suggest this. Instead, the evidence suggested only that Parker was in a car with men who together planned a murder and that guns were in the car. No evidence linked Parker and Williams to common possession of the gun other than their presence in the Grand Am's backseat.

III

In arguing that the district court substituted its judgment for that of the state court, Michigan relies on the standard of review set forth in AEDPA. While stringent, AEDPA's standard is not insurmountable. Recently, in *Brown v. Palmer*, this court noted that we continue to "distinguish reasonable speculation from sufficient evidence . . . in establishing that the state court's application of federal constitutional law as set forth in *Jackson*, 443 U.S. at 319, was objectively unreasonable." 441 F.3d at 352 (discussing *Fuller v. Anderson*, 662 F.2d 420 (6th Cir. 1981), and *Hopson v. Foltz*, No. 86-1155, 1987 WL 37432 (6th Cir. May 20, 1987)). Here, viewed individually each fact the state advances as "indicia of control" fails to link Parker to the gun, and viewed cumulatively the evidence gains no greater traction. The evidence may have led the jury, as *Brown* contemplates, to "reasonably speculate" that Parker possessed a weapon, but without  "indicia of control," insufficient evidence supports beyond a reasonable doubt Parker's constructive possession.

Although *Jackson v. Virginia* and AEDPA dictate deferential standards, this is the rare case where the jury's conclusion fails to conform to that of a rational jury, and where the Michigan Court of Appeals' contrary conclusion was unreasonable. For these reasons, we affirm.