NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0455n.06

07-1578

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jul 01, 2009

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| CALVIN SMITH, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KENNETH ROMANOWSKI, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: BATCHELDER, DAUGHTREY, and MOORE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Following the unsuccessful direct appeals of his convictions for the Michigan state criminal offenses of carrying a concealed weapon, felon in possession of a firearm, and possession of a firearm during the commission of a felony, Calvin Smith filed a petition for writ of habeas corpus in federal district court. In that petition, he claimed only that the evidence adduced by the prosecution was constitutionally insufficient to support the verdicts of guilt. He now continues that line of argument, insisting that the district court erred in denying him habeas relief. Even though another trier of fact could have found that the evidence of Smith's constructive possession of a firearm was insufficient to establish his guilt of the charged offenses beyond a reasonable doubt, such disagreement with the rendered jury verdict is not dispositive of the issue now before us. Rather, because the Michigan Court of Appeals

was not unreasonable in concluding that a rational trier of fact could find Smith guilty of the relevant offenses based upon the evidence presented at trial, we affirm the district court's denial of Smith's petition.

## **FACTUAL AND PROCEDURAL BACKGROUND**

At approximately 11:19 p.m. on December 31, 2002, Officer Jason Groulx of the Flint Police Department observed a van traveling on city streets with neither its headlights nor its taillights illuminated. After Groulx activated his patrol car's emergency lights, the van slowed to a speed of approximately ten miles per hour but continued for two or three blocks before turning into a parking lot and stopping. At that time, Groulx approached the driver, Calvin Smith, and requested to see his driver's license, vehicle registration, and proof of insurance. Smith produced a valid driver's license, but claimed that he had borrowed the van from a friend and thus was not in possession of the necessary registration and insurance information.

A computer check of the van's license plates verified Smith's statement that the vehicle was registered to an Eric Shoemo, but it also indicated that the plates were issued for an Oldsmobile Achieva, not for the GMC van to which they were attached. Because of the discrepancy, Groulx conducted an inventory of the van in preparation for impounding the vehicle. During that inventory, the officer pulled open a pocket on the back of the front passenger seat and saw numerous items, including a CD player and a .380 semi-automatic

handgun.[1]  Groulx testified at Smith's state-court trial that he did not see the weapon until he pulled open the pocket and that

> the firearm was placed inside the pocket . . . where . . . the muzzle, the front of the gun was pointing down and the grip was pointing in this direction, so it was accessible from the driver's position, from where the driver was sittin' in the vehicle the driver could reach into that pocket and retrieve that firearm from that pocket.  It wasn't sittin' in a fashion where it was just setting in there, in my opinion, it was sittin' in there at this angle in that pocket on top of other items that were in that pocket, and this – this firearm is quite heavy, so in the course of movement and – and traveling down a road this – this firearm is eventually gonna not remain in that position.  So that's where – where it was located when I found it.  So it was accessible from the driver's seat, the driver could reach with his arm behind that seat, reach into that pocket and retrieve that firearm from that pocket.

Eric Shoemo, the owner of the van, also testified at the trial and confirmed that he had indeed loaned his vehicle to Smith during the late evening hours of December 31, 2002.  He further stated that the handgun found in the van was not his and that he did not even own a gun.

Additional trial testimony was provided by another of Smith's friends, Marcius Cook, who said that the handgun retrieved from the van was his.  Cook explained that Smith had given him a ride in the van shortly before midnight on the date in question but that, because of Cook's inebriated condition at the time, the passenger had lain down on the seats behind the front seats until he was dropped off at a New Year's Eve party.  Cook also

---

[1]No fingerprints were found on the gun, on the ammunition cartridge inserted into it, or on a bullet removed from the firearm.

stated that he thought he had his gun with him when he exited the van and that he was surprised to learn that the weapon was found in the seat pocket. He could not explain how it got there.

Even though Smith's counsel argued that the petitioner was unaware of the presence of the firearm in the borrowed van, the jury nevertheless convicted the petitioner of carrying a concealed weapon and of being a felon in possession of a firearm, for which he received concurrent prison sentences of 32 months to 15 years. The jury also found Smith guilty of possessing a firearm in the commission of a felony, for which he was sentenced to an additional mandatory, consecutive prison term of five years. Efforts by the petitioner and his attorneys undertaken in the Michigan state court system to overturn the convictions proved unsuccessful, and Smith ultimately filed a petition for a writ of habeas corpus in federal court.

The magistrate judge to whom the matter was referred examined the trial evidence and recommended that the petition be granted. According to his analysis, each of the three offenses for which Smith was convicted required proof that the defendant "possessed" a firearm and, although even constructive possession of a weapon by the petitioner would have been sufficient to satisfy the state's evidentiary burden, "[a] defendant's mere presence near firearms, without more, is insufficient to prove that he or she was in possession of the firearm." (Citing *Parker v. Renico*, 450 F. Supp.2d 727, 733 (E.D. Mich. 2006), *aff'd in* 506 F.3d 444 (6th Cir. 2007)). The magistrate judge concluded:

> Here, there was no evidence presented going to petitioner's possession other than his presence in the car with the firearm. There was no evidence that petitioner had exclusive ownership or control of the vehicle; on the contrary, the unrebutted evidence was that the car was owned by petitioner's friend and driven by a number of people. There was no physical evidence tying petitioner to the gun – for example, no fingerprints were found on the gun and petitioner did not have ammunition on his person. There was no evidence that the gun was owned by or registered to petitioner. There was no testimony from witnesses who saw petitioner in possession of a gun at any time. There was no evidence that the gun was visible from its location such that petitioner had to have known about its presence. There was no testimony from the arresting officer that petitioner made any furtive movements indicative of trying to hide the gun. In short, there was no evidence against petitioner except for the fact that the gun was found in the same vehicle that he was driving. This was wholly insufficient to establish his possession of the weapon.

Finding the conclusion of the Michigan Court of Appeals to the contrary unreasonable, the magistrate judge recommended that the district court "should grant petitioner's application for the writ of habeas corpus, and should issue an unconditional writ ordering respondent to release petitioner from custody."

The district court rejected that recommendation, however, concluding that the Michigan Court of Appeals did not act unreasonably in finding the evidence sufficient to support Smith's convictions. In doing so, the court focused on certain facts that it claimed were overlooked by the magistrate judge. Specifically, the district judge noted that: (1) Smith was the only person in the van when the weapon was found; (2) the firearm was easily accessible to the petitioner; (3) the gun was resting on top of other items in the pocket even though it "was heavy enough that it would have settled down amongst everything else in the pocket if it had been in that location for any period of time"; (4) the

handle of the gun was pointed toward the driver's seat; and (5) Smith did not immediately pull over after Groulx activated his emergency lights, "indicating that he might have been stalling in an attempt to hide the weapon." Smith now appeals that conclusion regarding the claims of evidentiary insufficiency.

## DISCUSSION

"At the outset, it is important to recognize, as did the [district] judge in this case, just how limited is our review in a habeas proceeding." *Brown v. Konteh*, ___ F.3d ___, ___, Nos. 06-4037/4043, 2009 WL 1515501, at *10 (6th Cir. June 2, 2009). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the United States Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, we do not focus merely upon whether the state court decision was erroneous or incorrect; rather, we may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id.* at 409-11.

As we explained recently in *Brown*:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two separate layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). [E]ven though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier-of-fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown*, ___ F.3d at ___, 2009 WL 1515501, at *11.

Despite our inclinations, we cannot, therefore, "rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt." *Id.* at ___, 2009 WL 1515501, at *11. Nor can we end our habeas corpus inquiry after determining whether *any* rational trier of fact would conclude that petitioner Smith is guilty of the offenses with which he was charged. Instead, we must consider whether the Michigan Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find Smith guilty beyond a reasonable doubt based upon the evidence introduced at trial. *See, e.g.*, *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) ("The question 'is not whether a federal court believes the state court's determination . . . was incorrect but whether that determination was unreasonable – a substantially higher threshold.'") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). *See also Brown*, ___ F.3d at ___, 2009 WL 1515501, at *11.

As noted by the magistrate judge, a crucial element of each of the three offenses for which Smith was convicted was the defendant's possession of an operable firearm. *See* M.C.L.A. §§ 750.224f (felon in possession); 750.227(2) (carrying a concealed weapon); 750.227b(1) (possession of a firearm in the commission of a felony). Under well-established Michigan law, such possession may be either actual or constructive. *See Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the

intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). Such "control," however, "requires something more than a defendant's mere proximity to establish constructive possession." *Parker*, 506 F.3d at 449 (citations omitted). "The prosecution must show an additional independent factor linking the defendant with the [firearm]." *People v. Williams* 469 N.W.2d 4, 6 (Mich. Ct. App. 1991).

Smith's challenge to the sufficiency of the convicting evidence in this case relies upon his contention that the prosecution failed to establish that he was in constructive possession of the gun found in the pocket on the back of the front passenger seat. According to Smith, no witness ever saw him with a firearm, his fingerprints were not found on the weapon or its ammunition, the vehicle in which the gun was found did not belong to Smith, the handgun was not in plain view of the driver, and another friend of the petitioner admitted owning the firearm. Without question, each of these factors provides strong indications that Smith was not aware of the presence of the weapon and that the petitioner did not exercise dominion or control over it. Unfortunately for Smith, however, the likelihood or unlikelihood that this panel would convict or acquit the petitioner based upon the evidence adduced is irrelevant to his chances for success in this habeas proceeding. Instead, we repeat, this court must examine only whether the Michigan Court of Appeals was *unreasonable* in concluding that some rational trier of fact could examine

the testimony offered and conclude that Smith was guilty of the charged offenses beyond a reasonable doubt.

Here, the evidence of Smith's constructive possession of the handgun found in the van he was driving on December 31, 2002, is slim indeed. As this court has recently reaffirmed, "[t]he mere fact that [an individual] was driving the [vehicle] in which the police found the firearm is not enough to establish dominion and control over the firearm." *United States v. Bailey*, 553 F.3d 940, 947, (6th Cir. 2009). To convict a person of an offense involving constructive possession of a firearm, we therefore require additional circumstantial proof of such dominion and control. *See id.* In this case, however, a rational trier of fact could reasonably credit testimony that – in conjunction with other facts that do not, by themselves, establish Smith's guilt – supports the inference that the petitioner did indeed hide the handgun in the seat pocket after he realized that he was subject to a stop and search by the police. Specifically, Officer Groulx testified at trial that the firearm was placed into the seat pocket in such a way that it rested precariously on top of other items in the storage compartment but that "this firearm is quite heavy, so in the course of movement and – and traveling down a road this – this firearm is eventually gonna not remain in that position." The clear inference that could reasonably be drawn from such testimony is that the gun must have been placed in the pocket by Smith immediately prior to Groulx's search because, had it been stored there previously by Marcius Cook or by some other individual, the jostling resulting from travel on city streets – even the short distance the van traveled between the location where Smith dropped Cook and where the

van was stopped by Groulx – would have dislodged the weapon from the position in which it was found.

Regardless of how we would have viewed the evidence of Smith's guilt had we been called upon to evaluate the strength of the prosecution's case, we cannot escape the fact that the Michigan Court of Appeals was not unreasonable in choosing to credit Groulx's testimony and to put upon the facts of this case the gloss it did. According this evidence the most favorable inference possible, a rational trier of fact could choose to disbelieve the testimony of Marcius Cook and conclude that the petitioner placed the gun in its hiding place moments prior to Groulx's inventory of the van's contents. Because Smith has thus failed to satisfy the substantial burden placed upon him by the provisions of AEDPA, the district court appropriately denied the petition for the writ of habeas corpus.

## **CONCLUSION**

For the reasons set out above, we AFFIRM the district court's judgment.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Because I believe that our precedent requires a different result, I respectfully dissent.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979), provides the standard for evaluating a sufficiency-of-the-evidence claim and explains that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." "As framed by AEDPA, the issue [that we must consider] is whether the district court erred in concluding that the Michigan Court of Appeals unreasonably applied [*Jackson*]." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). This standard requires deference to the jury's verdict and to the state court's review of that verdict. *Id.* However, even after AEDPA, this panel must "distinguish reasonable speculation from sufficient evidence" when reviewing a state court's application of *Jackson*. *Brown v. Palmer*, 441 F.3d 347, 352 (6th Cir. 2006); *see also Parker*, 506 F.3d at 452.

Smith argues that the prosecution failed to prove that he possessed the firearm found in the van, an element required by each of the three statutes under which Smith was convicted. *See* Mich. Comp. Laws §§ 750.227(2), 750.224f, 750.227b. Under Michigan law, possession can be either actual or constructive. *Parker*, 506 F.3d at 448. As under federal law, "'a person has constructive possession if there is proximity to the [weapon] together with indicia of control.'" *Id.* (quoting *People v. Hill*, 446 N.W.2d 140, 143 (Mich. 1989)). Similarly, under both Michigan and federal law, "the 'indicia of control' element

requires something more than a defendant's mere proximity to establish constructive possession." *Id.* at 449.

Although AEDPA mandates deference to the state court's holding, I would hold that the evidence introduced against Smith shows nothing more than his proximity to the firearm and that the Michigan court's conclusion that this evidence was sufficient to prove possession was an unreasonable application of *Jackson*. I believe this result is required by our opinion in *Parker*. In *Parker*, four men, including Parker, were stopped by officers because the car they were in was driving erratically. *Id.* at 445-46. Immediately before the stop, one of the men in the car had shot another man four times. *Id.* at 445. When the officers tried to stop this car, it sped up and led the police on a high-speed chase. *Id.* at 446. During this chase, a door on the driver's side of the car opened. *Id.* The car eventually crashed, and the three other men ran from the car while Parker cooperated with officers, even preventing one of the other men from picking up a gun. *Id.* When police searched the car, they found two guns, one on the front passenger's side floor and one on the passenger's side back seat. *Id.* A third gun was found on the road along the chase route. *Id.* Parker had been sitting in the back seat on the driver's side. *Id.* at 445.

The Michigan courts found that there was sufficient evidence to show possession because "(1) Parker fled from law enforcement; (2) the officers saw an opening driver's side door; (3) the gun was within Parker's reach and in plain sight; and (4) as Williams exclusively used the Luger, Parker must have used the second gun in the backseat." *Id.*

at 450. We granted habeas relief because "viewed individually each fact the state advances as 'indicia of control' fails to link Parker to the gun, and viewed cumulatively the evidence gains no greater traction. The evidence may have led the jury, as *Brown* contemplates, to 'reasonably speculate' that Parker possessed a weapon, but without 'indicia of control,' insufficient evidence supports beyond a reasonable doubt Parker's constructive possession." *Id.* at 452. In reaching this conclusion, we were cognizant of the standard of review, noting that "[a]lthough *Jackson v. Virginia* and AEDPA dictate deferential standards, this is the rare case where the jury's conclusion fails to conform to that of a rational jury, and where the Michigan Court of Appeals' contrary conclusion was unreasonable." *Id.*

The state presented even less evidence of possession here than in *Parker*. None of the evidence cited by the Michigan Court of Appeals or by the district court indicates otherwise. Both courts noted that Smith was alone in the van at the time the gun was found. However, there was uncontroverted testimony that Smith was not the sole occupant of the van that night or the only person who drove the van. The prosecution did not challenge Cook's testimony that he was in the car on the night Smith was arrested or Shoemo's testimony that he loaned the van to a variety of different people.[2] Accordingly, the fact that Smith was alone at the time of his arrest is insignificant. The gun could have

---

[2]Shoemo testified that he did not keep anything in the seat-back pockets or own a gun, but he also testified that he had not been using the van. Additionally, Shoemo did not testify about whether he routinely cleaned the van or checked the contents of the pockets.

been placed in the pocket by Cook or by a third party who had previously borrowed the van. *See United States v. Bailey*, 553 F.3d 940, 946 (6th Cir. 2009) ("Because individuals other than Bailey used the car on the night Bailey was arrested and in the days before, no juror could conclude beyond a reasonable doubt that the mere fact that Bailey was driving the car meant that Bailey had placed the gun beneath the driver's seat.").

The Michigan Court of Appeals and the district court also highlighted the fact that the gun was positioned such that an individual driving the car could reach the weapon. However, as we explained in *Parker*, arguments that a firearm was "within an arm's reach" of an individual or "in plain sight" are "just proximity by another name." *Parker*, 506 F.3d at 451. Arguments that Smith could have reached the gun or that he could have reached the pocket to hide the gun are simply arguments that he was near the gun. Accordingly, the position of the gun would not permit a rational juror to conclude beyond a reasonable doubt that Smith possessed the weapon.

The Michigan Court of Appeals noted that Cook did not know how the gun had gotten into the seat-back pocket. While this is true, this fact does not prove that *Smith did know* how the gun found its way there. It is not enough for the state to negate Smith's case; the prosecution must prove, beyond a reasonable doubt, every element of the crime, including that Smith possessed this firearm. Even if Cook had not testified and if Smith had not presented a theory as to who put the gun in the van, I believe that the state failed to present sufficient evidence that Smith possessed the firearm.

The district court stated that it relied most heavily on the fact that Groulx testified that although the gun was heavy, it had not fallen to the bottom of the pocket. Although I believe that this fact presents the closest question, I do not find that it provides sufficient evidence that Smith possessed the weapon. This argument is yet another restatement of the fact that the gun was close to Smith. Had the gun fallen to the bottom of the pocket, it would not have been easily accessible to Smith; only because it remained on the top of the pocket was it near Smith. And, as stated above, mere proximity to a weapon is insufficient to show possession. Additionally, Groulx's testimony regarding the pocket was far from definite; he stated that the gun would "eventually" fall from its position and that he could identify the position the weapon had been in even though he had to pull the pocket open to find it. Joint Appendix ("J.A.") at 74-75 (Trial Tr. at 107-08). Further, Groulx did not stop Smith far from where Smith dropped Cook off, so there is no indication that sufficient time had passed for this eventuality to occur since Cook left the van. *Compare* J.A. at 120-21 (Trial Tr. at 156-57) (noting that Smith dropped Cook off near Church, 12th, and Beach Streets), *with* J.A. at 62-63 (Trial Tr. at 95-96) (indicating that Groulx first saw Smith near these same streets).

Additionally, the prosecution did not prove or even allege any of the facts that sometimes serve as indicia of control: Smith's fingerprints were not on the weapon; Groulx never saw Smith reach for the weapon; Smith cooperated with Groulx and there is no indication that Smith was nervous or concerned about the search; Smith did not have sole possession and control of the van; no one had seen Smith with a weapon; no one knew

of Smith having a weapon; the gun was not visible to Smith while he was driving; and Smith did not have any ammunition with him. I believe that this case presents less evidence of the indicia of control necessary to establish possession than was shown in *Parker*. The evidence shows nothing more than Smith's proximity to the weapon. As in *Parker*, "[t]he evidence may have led the jury, as *Brown* contemplates, to 'reasonably speculate' that [the defendant] possessed a weapon, but without 'indicia of control,' insufficient evidence supports beyond a reasonable doubt [the defendant's] constructive possession." 506 F.3d at 452. AEDPA review requires us to "distinguish reasonable speculation from sufficient evidence." *Brown*, 441 F.3d at 352 (6th Cir. 2006). Because the case against Smith rests on nothing more than speculation, I believe that the Michigan Court of Appeals unreasonably applied *Jackson v. Virginia*, and I would **REVERSE** the district court's **DENIAL** of habeas.