NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0638n.06
Filed: October 21, 2008

No. 07-3135

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| *Plaintiff-Appellee*, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| v. | ) | |
| | ) | **O P I N I O N** |
| **ERNEST MATTHEWS** | ) | |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:     COLE and GIBBONS, Circuit Judges; FORESTER, District Judge.[*]

**COLE, Circuit Judge.** Defendant-Appellant Ernest Matthews was convicted of attempting to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and § 846. On appeal, Matthews argues that (1) the trial evidence was insufficient to sustain his conviction, entitling him to a judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure, and (2) a new trial is warranted based on newly discovered evidence and in the interest of justice. For reasons set forth below, we **AFFIRM** Matthews's conviction and the district court's denial of his motion for a new trial.

## I. BACKGROUND

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Matthews was tried and convicted of a single-count charge of attempting to possess with intent to distribute 100 kilograms or more of marijuana.

The following evidence was introduced at trial. On March 26, 2005, the Kansas State Highway Patrol stopped a semi-tractor-trailer near Kansas City because the registration number displayed on the truck's door had an extra digit. The truck had a flat bed that was loaded with sheets of housing insulation covered by tarps. The police became suspicious and asked the driver, Arnulfo Quintana, to follow them to a police station so a drug-detection dog could search the truck. At the station, Quintana told the officers that marijuana was hidden in the insulation in a certain pallet of the truck's load. There, the officers discovered thirty-nine bales of marijuana, weighing 749 pounds.

Quintana testified that an individual named Martin Guzman had proposed that Quintana haul a load of marijuana to Cleveland, Ohio in exchange for $25,000. Quintana spoke to Guzman about the proposition several times, including once at a truck stop near Tuscon, Arizona. Quintana was inconsistent about the date of the truck-stop meeting, but sometime around March 15 or 16 he dropped off an empty flat-bed tractor-trailer at a location specified by Guzman. When Quintana returned a day later, the trailer had been loaded with the insulation sheets and the marijuana. Quintana admitted that he had been using crystal methamphetamine around the time of his truck-stop meeting with Guzman.

After being stopped by the Kansas State Highway Patrol, Quintana agreed to serve as a cooperating witness and to continue with the load and make a controlled delivery. Accordingly, Quintana, accompanied by Kansas City task force officers, continued overnight on his planned route to Cleveland. Once in Cleveland the following day, Quintana and the Kansas officers went to the

Cleveland Drug Enforcement Agency ("DEA") office where DEA officers equipped Quintana with a recording device. Quintana then drove the tractor-trailer alone to the delivery destination, with close police surveillance.

Meanwhile, personnel at the Cleveland DEA contacted DEA Special Agent William Leppla late on March 26 or early on March 27 to advise him of the impending delivery of marijuana. Leppla was told the delivery would occur on March 27 somewhere on Aurora Road in Warrensville Heights, a suburb of Cleveland, near a warehouse marked by a parked brown tractor-trailer. The DEA remained in contact with the Kansas officials accompanying Quintana and kept Leppla informed of the progress of the controlled delivery. Leppla and other agents proceeded to the Aurora Road location and, by a process of elimination, determined that the delivery point was a warehouse, sub-divided into garages. Leppla had been in and around the area beginning at 11:00 a.m. on March 27. He met with Task Force Officer Jamaal Ansari around 6:00 p.m., and they took settled positions at 6:30 p.m. Leppla testified that during the time he was surveying the area, there was virtually no traffic on the street because it was Easter Sunday.

Leppla testified that at about 6:40 p.m., two vehicles—a two-tone Chevrolet Suburban followed by a black Chevrolet Trailblazer, each driven by a black male and containing no other passengers—pulled up to a garage door at the warehouse. Leppla stated that the driver of the Suburban, whom he later identified as Matthews, exited the vehicle, entered the warehouse through a "man door," and then pulled up the garage door from the inside. The two men then pulled the vehicles into the garage, stood outside the garage for several minutes, returned to their vehicles, backed them out of the garage, shut the door, and left. Leppla testified at trial that the entire visit

lasted about fifteen minutes, although this was inconsistent with his testimony at the suppression hearing that they had stayed for about twenty-six minutes.

At approximately 7:10 p.m., Quintana arrived at the garage, driving the tractor-trailer. Minutes later, the Trailblazer and Suburban reappeared. Leppla testified that they were driven by the same men who had departed minutes earlier. Matthews, the driver of the Suburban, again opened the garage door. He met briefly with Quintana and the driver of the Trailblazer, later identified as Matthews's co-defendant Edward Jackson, then entered the garage out of Leppla's sight. Jackson climbed onto the bed of the tractor-trailer and, with Quintana's assistance, began loosening the canvas straps of the pallet containing the marijuana. The wire Quintana was wearing recorded Jackson saying something about "doing it right here." (Trial Tr. vol. 2, 425, Sept. 14, 2005, Joint Appendix ("JA") 321.) Quintana testified that Jackson was referring to unloading the marijuana. At this point, Leppla became concerned about the officers' safety because it was getting dark outside, so he contacted his supervisor at the DEA for approval to make the arrests. Approval was given, and more than six officers emerged from hiding, identified themselves as officers, and arrested Quintana, Matthews, and Jackson. A search of Matthews revealed approximately $3200 in cash, and the officers found approximately $500 in cash on the floor near where they had arrested him. The Trailblazer contained rental car papers, gallon-sized plastic baggies, and rolls of contact paper.

After the arrest, the police searched Matthews's house and learned that he had flown to Las Vegas, Nevada in March. The parties entered a stipulation that Matthews had departed Cleveland, Ohio on an America West Airlines flight on March 1, 2005, for Las Vegas, Nevada. The stipulation further provided that on March 13, 2005, Matthews had departed Las Vegas, Nevada on an America

4

West Airlines flight, arriving in Cleveland in the early morning hours of March 14, 2005.

After the police learned that Matthews had traveled to Las Vegas, Quintana told the police that he recognized Matthews from his mid-March meeting with Guzman at the truck stop outside of Tuscon, Arizona. He stated that at this meeting, Guzman had introduced Matthews as "the boss and the person [he] would be delivering the marijuana to." (Trial Tr. vol. 2, 459, JA 344.) He stated that he had not seen Matthews clearly at the meeting because Matthews had remained in the passenger seat of Guzman's car while Quintana and Guzman discussed the deal. He further testified that "all the black people look the same, and [he] wasn't paying much attention," (Trial Tr. vol. 2, 463, JA 348), but that he understood that the man in the passenger seat was the one who would be waiting for him in Cleveland, and that Matthews was one of the two people he had seen on the day of the delivery. He also stated that he had only been to Cleveland one other time, in January 2005, to have a truck repaired.

Leppla testified that, based on his training and experience, the baggies and contact paper found in the Trailblazer were of a type often used by drug dealers to package large quantities of marijuana. In addition, he testified that it was not unusual to find only $3200 in Matthews's possession—an amount far too small to pay for the amount of marijuana delivered—because traffickers generally avoid having drugs and money at the same location during a drug deal.

At the close of the Government's case, Matthews moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the evidence, taken in the light most favorable to the Government, was insufficient to allow a rational jury to find beyond a reasonable doubt the essential elements of the crime charged. Matthews pointed to Leppla's contradictory

testimony about the length of time the two individuals had been in the garage during their first appearance at the warehouse and to the unreliability of Quintana's testimony, given his uncertainty about dates and his admission to using drugs around the time of his meeting with Guzman. The district court denied the motion, and Matthews thereupon presented his case.

Matthews introduced several witnesses who testified to the following: Matthews traveled to Las Vegas, Nevada on March 1, 2005, to Tucson, Arizona from March 7 through March 9 so that his girlfriend could interview for a job, and then back to Cleveland on March 14; during this trip, Matthews did not meet with anyone at a truck stop; Quintana had possibly been to the warehouse on Aurora Road before to have his truck washed; Matthews's aunt rented the Trailblazer and owned the contact paper and baggies; Matthews's aunt prepared an dinner on Easter Sunday at which Matthews and Jackson were present; Mathews's aunt asked Matthews and Jackson to take the Trailblazer to be washed at the warehouse because it was due to be returned the following day; the Suburban was owned by a friend named Dartanyan Thompson; and Thompson had accompanied Jackson to the warehouse initially to look at some motorcycle parts, while Matthews had only been present for the second trip to the warehouse, for which he had borrowed Thompson's Suburban. Matthews's co-defendant, Jackson, asserted a theory that after being arrested in Kansas, Quintana had decided to conceal the true destination of the marijuana and lead police to the warehouse in Cleveland where he had previously had his truck washed.

The jury returned a guilty verdict, and the district court sentenced Matthews to 120 months of imprisonment. Matthews timely appealed.

## II. ANALYSIS

Matthews essentially asserts two claims on appeal: (1) the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support a conviction, and (2) the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence that Quintana gave false testimony.

### A.     Motion for Judgment of Acquittal

#### 1.  Standard of Review

"This court reviews de novo a denial of a motion for judgment of acquittal, but affirms the decision if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003) (internal quotation marks omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (when considering sufficiency of evidence to sustain a conviction on direct appeal, the "relevant question" is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Because the issue is one of legal sufficiency, the court "neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). An appellate court cannot substitute its judgment for that of the jury. *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). "[C]ircumstantial evidence alone can sustain a guilty verdict and . . . [such] evidence need *not* remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984). This standard is a great obstacle to overcome, *United States v. Winkle*, 477 F.3d 407, 413 (6th Cir. 2007), and presents the appellant in a criminal case with

a very heavy burden, *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007).

### 2. Merits

Matthews asserts that he was entitled to a judgment of acquittal pursuant to Rule 29(c) because the Government's proof at trial established nothing more than Matthews's presence at the delivery scene, which is inadequate to support his conviction of attempted possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and § 846. The district court denied the motion, finding that the evidence introduced at trial was sufficient for a rational finder of fact to conclude that the elements of the offense had been proven beyond a reasonable doubt.

"The elements of a charge of possession with intent to distribute illegal drugs are (1) the defendant knowingly; (2) possessed a controlled substance; (3) with intent to distribute." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). To obtain a conviction for an attempt crime, "the government must demonstrate a defendant's intent to commit the proscribed criminal conduct together with the commission of an overt act that constitutes a substantial step towards commission of the proscribed criminal activity." *United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999). After consideration of the evidence introduced at trial in this case, we cannot say that no rational trier of fact could have found these elements beyond a reasonable doubt.

It was undisputed at trial that a flat-bed trailer hauling more than 700 pounds of marijuana arrived at Jackson's garage on Easter Sunday, March 27, 2005. Two officers testified that Jackson and Matthews appeared at the garage briefly and then left several minutes before Quintana arrived. It is undisputed that, minutes after Quintana arrived, Matthews and Jackson appeared at the garage and spoke with Quintana. Leppla testified that after the truck pulled in, Jackson began to assist

Quintana with the removal of the straps from the area of the trailer that contained the marijuana. Although the recording from the wire worn by Quintana does not contain explicit discussion of drugs, Jackson mentioned "doing it right here," and Quintana testified that Jackson was referring to unloading the marijuana. It is undisputed that Matthews had approximately $3200 in cash on his person when he was arrested, and another $500 in cash was found on the ground near where he was arrested. Leppla testified as an expert in drug trafficking that the items seized after searching the vehicles were consistent with the packaging of marijuana for sale. Finally, the Government presented Quintana's testimony suggesting that Matthews had met earlier in Arizona with Guzman, the alleged source of the marijuana.

Taking this evidence in the light most favorable to the Government, as we must, a rational juror could conclude beyond a reasonable doubt that Matthews intended to receive the marijuana. Based on the large quantity of marijuana and the fact that there were baggies and contact paper in the car, a jury could conclude beyond a reasonable doubt that Matthews intended to distribute the marijuana. Matthews points to discrepancies in several of the witnesses's testimony, such as Leppla's and Ansari's differing recollections as to which vehicle—the Suburban or the Trailblazer—pulled into the garage first. But, as the district court accurately noted, these distinctions relate to credibility and Matthews addressed them thoroughly during cross-examination. Because this Court is prohibited from independently weighing the evidence or judging the credibility of witnesses, *see Talley*, 164 F.3d at 996, Matthews's arguments fail. There was sufficient evidence

9

presented at trial to support Matthews's conviction, and the district court did not err in denying his motion for judgment of acquittal.

**B.      Motion for a New Trial**

*1.  Standard of Review*

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  When faced with a Rule 33 motion, unlike a motion for judgment of acquittal under Rule 29, the district court may weigh the evidence and assess the credibility of the witnesses; "[i]t has often been said that [the trial judge] sits as a thirteenth juror" when considering a Rule 33 motion.  *United States v. Solorio*, 337 F.3d at 589 n.6 (quotation marks and citation omitted).  When reviewing the district court's decision to deny a motion for a new trial based on newly discovered evidence, this Court may only decide whether the district court's determination constitutes an abuse of discretion.  *United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005); *see also United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986) ("Motions for a new trial based on newly discovered evidence are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent 'clear abuse of discretion.'" (quoting *United States v. Allen*, 748 F.2d 334, 337 (6th Cir. 1984) (per curiam))).

*2.  Merits*

After the jury found him guilty, Matthews moved for a new trial claiming he had discovered new evidence proving that Quintana had given false testimony.  The motion was supported by hotel reservation confirmations, credit card receipts, and expert handwriting analyses demonstrating that

Quintana had stayed at a hotel near Cleveland from March 13, 2005 through March 17, 2005. The district court summarized the relevance of the evidence as follows:

> Quintana testified that he had visited Cleveland, Ohio in January 2005 to have a truck repaired. He further testified that he had not visited Cleveland at any other time prior to the arrest. Moreover, Quintana testified that he met Matthews in [Tuscon in] mid-March 2005 (specifically March 15, although he was unsure regarding the exact date) and the semi-tractor trailer was loaded with marijuana the following day.... Beyond damaging the credibility of Quintana's entire testimony, the newly discovered evidence is relevant in two significant respects: (1) it demonstrates that Quintana could not have met with Matthews on March 15, 2005 [in Tuscon] as [Quintana] was in Cleveland, Ohio; and (2) Quintana's presence in Cleveland, Ohio in March 2005 ... provides corroboration to Jackson's claim that he washed Quintana's semi-tractor trailer in March, 2005.

(Mem. Op. and Order, Oct. 23, 2006, JA 178-79.) Despite concluding that Quintana had presented false testimony, the district court denied Matthews's motion for a new trial, finding that the newly discovered evidence was largely cumulative and impeaching and that it would not have impacted the outcome of the trial.

To warrant a new trial on the basis of newly discovered evidence, Matthews must demonstrate that "(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *Jones*, 399 F.3d at 648 (citing *O'Dell*, 805 F.2d at 640). Although the evidence of Quintana's mid-March stay in Cleveland was not discovered until after trial, Matthews fails to meet the three other requirements for a new trial. While Quintana's name was not provided to defense counsel until trial, there is no evidence that Matthews was surprised that the Government called Quintana as a witness. Matthews observed Quintana at the time of the arrest, and Quintana was mentioned in the prosecution's opening

statement, yet Matthews did not request a continuance or trial subpoena to seek the evidence that was later discovered. Moreover, other evidence indicates that prior to trial, defendants knew that Quintana had previously stayed in a hotel in Cleveland. Thus, Matthews has not established that the newly discovered evidence could not have been discovered with due diligence prior to trial.

Further, the district court concluded that the newly discovered evidence was merely cumulative and impeaching. The district court found, and the record reflects, that defense counsel had already "fatally damaged" Quintana's credibility during trial. (Mem. Op. and Order, Oct. 23, 2006, JA 180.) Quintana was shown to be unable to recall dates and unable to remember that Matthews had large, visible scars on his face. He stated that "all the black people look the same" to him, (Trial Tr. vol. 2, 463, JA 348), that he was using drugs at the time of the events at issue, and that he hoped for leniency from the Government in exchange for his cooperation. Accordingly, to the extent that the new evidence would have contradicted Quintana's testimony, the district judge did not abuse his discretion in finding that such evidence would merely have been cumulative and impeaching.

Matthews has also failed to show that the newly discovered evidence would likely have resulted in an acquittal. The district court concluded that even if all portions of Quintana's testimony, except those that are undisputed, were removed from the record, there would still be sufficient evidence to convict Matthews. As recounted above, there is no dispute that Quintana was apprehended with a load of marijuana and that he indicated Jackson's garage as the delivery location. There is no dispute that minutes after Quintana arrived at the warehouse on Easter Sunday, Matthews and Jackson arrived and spoke with Quintana. There is no dispute that one of the vehicles in which

12

Matthews and Jackson arrived contained materials commonly used for packaging marijuana. There is no dispute that Matthews had approximately $3200 on his person at the time of his arrest and that another $500 was found on the floor near where he was arrested. Agent Leppla testified that Jackson climbed onto the truck and began to undo the straps where the marijuana was hidden, saying something about "doing it right here." Based on this evidence, nearly all of which is undisputed, the district court did not abuse its discretion in concluding that the newly discovered evidence would not have resulted in an acquittal and in denying Matthews's motion for a new trial.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Matthews's conviction and the district court's denial of his motion for a new trial.