**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0778n.06

**No. 07-3303**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 21, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| EDWARD JACKSON, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |

**BEFORE:** MOORE, SUTTON and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Defendant Edward Jackson was found guilty of attempting to possess 100 kilograms or more of marijuana with intent to distribute it. Although the evidence of Jackson's intent to possess the marijuana was thin—as the police interrupted the transaction and arrested Jackson before he actually possessed it—the trial court denied Jackson's motion for judgment of acquittal. After the jury returned its guilty verdict, the trial court also denied Jackson's motion for new trial or judgment of acquittal, notwithstanding newly discovered evidence that an informant had given false testimony. On appeal, Jackson challenges both of these rulings. For the reasons that follow, we find no error and therefore affirm the judgment as well as the denial of the motion for new trial.

## I. BACKGROUND

On March 26, 2005, Arnulfo Quintana, a self-employed truck driver, was en route from Tucson, Arizona to Cleveland, Ohio with a load of Celotex insulation on his flatbed trailer, when he stopped at a rest area near Emporia, Kansas. There he encountered law enforcement officials who were checking an irregularity in his trailer registration number. When his load was subjected to a dog-sniff inspection, Quintana admitted that marijuana was concealed in the insulation. He explained that Cleveland was his destination and he agreed to cooperate with the police in performing a controlled delivery.

Authorities in Cleveland were alerted. Police staked out the identified warehouse area on Aurora Road in Warrensville Heights (just southeast of Cleveland) on March 27, 2005, Easter Sunday. In the early evening hours, just before dusk, officers observed two vehicles, a Chevrolet Suburban and a Chevrolet Trailblazer, arrive together at the warehouse at 20905 Aurora, which was subdivided into garages. Their drivers, two African-American males, pulled the vehicles into one of the garages. Approximately fifteen minutes later, they left, each in a separate vehicle. Ten to fifteen minutes later, officers observed the arrival of Quintana's red semi-truck and trailer at the same warehouse. He parked it parallel to the warehouse. Approximately five minutes later, two additional vehicles arrived, the same Trailblazer and Suburban that had just departed, each driven by an African-American male. Edward Jackson was the driver of the Trailblazer; the Suburban was driven by Jackson's friend, Ernest Matthews. Officers observed Matthews open the door to the warehouse garage and then both men met briefly with Quintana. Then, as Matthews entered the garage to look for pliers, Jackson began helping Quintana loosen the canvas straps securing the

pallets of insulation to the trailer. At this point, because it was getting dark, the observing officers moved in to arrest the suspects. Matthews and Jackson "moved rather rapidly" or "ran" into the warehouse garage, where they were apprehended and placed under arrest.

Concealed within the tallest load of insulation, the officers discovered 39 bales containing 749 pounds of marijuana. Upon arresting Matthews, they found over $3,200 in currency on his person, in addition to some $500 near him. In the Trailblazer, driven by Jackson, officers found a quantity of two-gallon sized plastic storage bags and three rolls of contact paper. DEA Special Agent William Leppla, one of the officers who participated in the surveillance and arrests, recognized, based on his experience in drug trafficking investigations, that such storage bags are commonly used to repackage quantities of marijuana. Leppla also observed that the contact paper found in the Trailblazer was similar to that in which the bales of marijuana were wrapped.

Jackson and Matthews were subsequently charged in the Northern District of Ohio with knowingly and intentionally attempting to possess with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. A jury trial commenced on September 13, 2005.

In addition to the above facts, which were essentially undisputed, the government's case included Quintana's testimony (with the aid of an interpreter) explaining that he had been hired in Tucson by one Martin Guzman to transport the marijuana to Cleveland for $25,000. When Quintana entered into the agreement in mid-March, Guzman was accompanied by an African-American man, identified by Guzman as "the boss." Quintana was told that "the boss," who Quintana only saw briefly in the passenger seat of Guzman's vehicle, would be in Cleveland to meet him. Quintana

identified this man, who was in fact present to receive delivery in Cleveland, as Ernest Matthews,

Jackson's co-defendant. On cross-examination, Quintana denied ever having been to the Aurora

Road warehouse before; said he did not know it was a mobile wash business; denied having been

in Cleveland in February or early March of 2005; but admitted being in Cleveland in January 2005,

when his truck broke down on the way to Philadelphia.

Further, DEA Task Force Officer Jamaal Ansari testified that the day after Matthews was

arrested, Matthews acknowledged having been in Tucson, but denied going there to make a deal.

Ansari's testimony was followed by introduction of a stipulation that America West Airlines records

showed Matthews departing Cleveland for Las Vegas on March 1, 2005 and returning to Cleveland

from Las Vegas in the early morning hours of March 14, 2005.

At the close of the government's case in chief, the district court denied the defendants'

motions for judgment of acquittal. For the defense, neither defendant took the stand. Gregory

Robitson testified that he had been employed by Jackson at his mobile wash business that operated

out of the Aurora Road warehouse from March 2004 to May 2005. He remembered having once

washed a red semi-truck driven by a man with a strong accent, but Robitson did not know the make

of the truck.

Chantay Robinson, Matthews' aunt, testified that she had been in Las Vegas with Matthews

and others March 10-13, 2005, having flown back on the same flight as Matthews late on the 13th.

Robinson also testified that she had rented the Trailblazer Jackson had driven to the warehouse from

Enterprise Rent-A-Car in February. Robinson was hosting a family gathering on Easter Sunday;

Matthews and Jackson were both guests. At some point, Robinson told Matthews to take the

Trailblazer to Jackson's mobile wash for a thorough cleaning, because it was to be returned to Enterprise the next day. Robinson explained that she used the plastic storage bags found in the Trailblazer to store frozen foods. The rolls of contact paper, she explained, were used for various household projects.

Dartanyan Thompson was the owner of the Suburban. He was at Robinson's for Easter dinner, too. He testified that at about 6:30 p.m., he drove over to the Aurora Road warehouse, with Jackson accompanying him in the Trailblazer, to look at some motorcycle parts and some mobile wash cleaning equipment that Jackson had there. This took 15-20 minutes; then they returned to Robinson's. Later, Thompson testified, Matthews borrowed Thompson's Suburban and drove away with Jackson, who drove the Trailblazer again.

Finally, Matthews' girlfriend Cynthia Harris testified about the trip they had taken, flying to Las Vegas on March 1, and driving to Los Angeles, Phoenix, Tucson, and then back to Las Vegas, before returning to Cleveland in the early morning hours of March 14. Apart from a two-and-a-half-hour period in Phoenix on March 7, when Harris had a job interview with American Express, she said she and Matthews were constantly together: they arrived in Tucson late on the 7th and left for Las Vegas on the morning of the 9th. Harris's testimony tended to impugn Quintana's testimony that Matthews was present when he met with Guzman in mid-March.

In his closing argument, Jackson's counsel argued that Quintana was not a reliable witness and that the government's case, short on corroborating evidence, left too many questions unanswered. He insisted the government had failed to prove beyond a reasonable doubt that Jackson was guilty of the crime charged.

The jury began deliberating on September 16, 2005, and resumed on September 19, when they returned their verdicts, finding both defendants guilty as charged. Both defendants moved for new trial or, in the alternative, for judgment of acquittal. Over the next several months, these motions were supplemented and fully briefed, before the district court conducted a hearing on the motions on May 31, 2006, and then received further post-hearing briefs. Finally, on October 23, 2006, the district court issued its opinion denying the motions for new trial or for judgment of acquittal.

Jackson was sentenced on February 21, 2007. The court imposed the mandatory minimum prison term of 60 months. On appeal, Jackson challenges the district court's denials of his motion for judgment of acquittal and motion for new trial, reasserting the same arguments the district court rejected.[1]

## II. ANALYSIS

### A. Sufficiency of Evidence

### 1. *Standard of Review*

The district court's denial of Jackson's motion for judgment of acquittal is reviewed de novo. *United States v. Kuehne*, 547 F.3d 667, 677 (6th Cir. 2008). Yet, to prevail on this claim that the government's proofs were insufficient to sustain the conviction, Jackson must bear a "heavy

---

[1]Matthews' appeal from these very same rulings, implicating issues nearly identical to those here raised by Jackson, was rejected by another panel of this court on October 21, 2008. *United States v. Matthews*, 298 F. App'x 460 (6th Cir. 2008).

Jackson's appeal, although originally filed at about the same time as Matthews', was neglected for two years, having been dismissed for want of prosecution in April 2007, and then reinstated in March 2009.

burden." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010). In reviewing the sufficiency

of the evidence challenge, we "examine the evidence in the light most favorable to the government

and draw all inferences in the government's favor in order to determine whether any rational trier

of fact could have found the elements of the offense beyond a reasonable doubt." *United States v.*

*Torres-Ramos*, 536 F.3d 542, 556 (6th Cir. 2008). "This analysis does not require the removal of

every hypothesis except that of guilt." *Id.*

Because the issue is one of legal sufficiency, we are not permitted to independently weigh

the evidence or judge the credibility of witnesses. *United States v. Howard*, 621 F.3d 433, 460 (6th

Cir. 2010). For the court of appeals to assess witness credibility would be to impermissibly "invade

the province of the jury as the sole finder of fact in a jury trial." *Graham*, 622 F.3d at 449. (quoting

*United States v. Bearden*, 274 F.3d 1031, 1039 (6th Cir. 2001)). An attack on witness credibility is

a challenge to "the quality of the government's evidence and not the sufficiency of the evidence."

*Id.* (quoting *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006)).

## 2. *Merits*

In denying defendants' motions for judgment of acquittal as a matter of law, the district court

explained why the proofs, viewed in the light most favorable to the prosecution, were sufficient to

sustain the convictions:

> In short, the Government presented evidence that (1) the defendants appeared at the
> garage in preparation for the arrival of the semi-tractor trailer; (2) the semi-tractor
> trailer arrived at the destination; (3) the defendants again appeared shortly after the
> arrival of the semi-tractor trailer; (4) the defendants held a discussion with the driver
> of the semi-tractor trailer; (5) Jackson appeared to assist with the removal of the
> marijuana from the semi-tractor trailer; and (6) the defendants had in their possession
> items utilized in drug trafficking. Moreover, the Government presented the

testimony of Quintana that suggested that Matthews had appeared in Arizona with the alleged source of the marijuana several week earlier.

R. 185, Memorandum Opinion and Order p. 28. The court went on to explain that although defendants had identified discrepancies and inconsistencies in the testimony of various government witnesses, "a rational juror could conclude beyond a reasonable doubt that Jackson's and Matthews's independent conduct, when viewed objectively, unequivocally corroborates their individual and subjective intent to commit the crime as charged." *Id.* at 29.

Jackson insists the district court erred. He maintains there was no proof that he attempted to knowingly possess the marijuana and no evidence that he knew the cargo loaded on the trailer contained marijuana. While acknowledging that the jurors are allowed to draw reasonable inferences from the circumstantial evidence, Jackson argues that their verdict cannot legitimately be based on mere speculation.

Jackson is right: his mere presence at the scene of a crime does not establish guilt. *See Parker v. Renico*, 506 F.3d 444, 452 (6th Cir. 2007). Nor, it must be conceded, is there any *direct* evidence that he was aware of the presence of the marijuana on the trailer.

To sustain the charge, the government was required to prove beyond a reasonable doubt, as the district court acknowledged, that Jackson intentionally took an overt act that constituted a substantial step toward knowingly possessing marijuana with intent to distribute it. That Jackson took an overt act toward exercising dominion over the cargo containing the marijuana is substantiated by Leppla's testimony that he observed Jackson helping Quintana try to remove the cargo from the trailer. That Jackson intended to distribute the marijuana may be reasonably inferred

from the large quantity of marijuana involved. *See United States v. Wettstain*, 618 F.3d 577, 587 (6th Cir. 2010). Hence, the critical question posed in this case is whether the circumstantial evidence presented by the government, viewed in the light most favorable to the government, is sufficient to warrant the conclusion by a rational jury that Jackson knew marijuana was concealed in the cargo.

While circumstantial evidence giving rise to reasonable inferences can support a conviction, "reasonable speculation" is not sufficient evidence. *See Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008); *Parker*, 506 F.3d at 452. But here, in the rationale quoted above, the district court identified six items of evidence that support a reasonable inference that Jackson knew the cargo contained marijuana. Defendants presented evidence tending to offer innocent explanations for their presence at the garage on Easter Sunday evening when the truck load of insulation happened to arrive, and for their possession of materials commonly used in drug trafficking. Yet, in reviewing the sufficiency of the evidence, we are obliged to draw all reasonable inferences in favor of the government. Moreover, several of the factors pointing toward culpability have not been met by any innocent explanation. For instance, defendants' apparently ready willingness to cooperate with a stranger in receiving delivery of and helping to unload an unexpected truckload of new construction insulation materials at a mobile wash business on Easter Sunday is unusual and yet unexplained. In this respect, Jackson's conduct at the scene appears to be inconsistent with the defense story that he and Matthews took a break from the Easter celebration at Chantay Robinson's home simply to do her the favor of cleaning her rental vehicle. Also unexplained is Jackson's hasty retreat into the garage when the police officers came out of hiding. His reaction to the emergence of the police is inconsistent with his professed innocence. *See Brown v. Palmer*, 441 F.3d 347, 352 (6th Cir. 2006).

Of course, Jackson has no burden to prove his innocence and no adverse inference can be drawn from his decision not to testify. Yet, whether the circumstantial evidence supports (a) "reasonable inference" pointing to guilt, or (b) only "reasonable speculation" about the possibility of guilt, is a determination that clearly requires a "common sense" assessment—the sort of assessment the jury was instructed to make—of the plausibility of various inferences that might be drawn from the known facts. Making this common sense assessment of all the known circumstances compels the conclusion that the jury's finding that Jackson knew of the presence of the marijuana was the product of reasonable inference, not mere speculation. For the reasons clearly set forth in the district court's opinion, the jury's verdict was properly found to be supported by sufficient evidence. This reasoning was adopted by another Sixth Circuit panel in relation to the conviction of Jackson's co-defendant Matthews. *See Matthews*, 298 F. App'x at 465. Jackson has given us no persuasive reason to depart from that reasoning in this case. Accordingly, we find no error in the district court's denial of the motion for judgment of acquittal.

**B. Denial of Motion for New Trial**

**1. *Standard of Review***

The district court's denial of Jackson's motion for new trial based on newly discovered evidence is reviewed for abuse of discretion. *United States v. Olender*, 338 F.3d 629, 635-36 (6th Cir. 2003). Motions for new trial based on newly discovered evidence are disfavored and the district court's ruling should not be disturbed unless it "clearly abused its discretion." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000). "A district court clearly abuses its discretion when it 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous

findings of fact.'" *Id.* (quoting *Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 895 (6th Cir. 1996)). The movant bears the burden of demonstrating that "(1) the evidence was discovered after the trial, (2) it could not have been discovered earlier with due diligence, (3) it is material and not merely cumulative or impeaching, and (4) it would likely produce an acquittal if the case was retried." *Id.* at 586-87.

### 2. *Merits*

In denying defendants' motions for new trial, the district court acknowledged that newly discovered evidence strongly suggested that Quintana gave false testimony when he testified (a) that he met Matthews with Guzman in Tucson in mid-March 2005; and (b) that he had not been to Cleveland in February or early March 2005. R. 185, Memorandum Opinion and Order p. 36. Yet, the court observed that Quintana's credibility in these particulars had already been destroyed. The court concluded that the newly discovered evidence was "cumulative and impeaching." *Id.* at 37. The court found "there was substantial undisputed evidence linking Jackson and Matthews to the marijuana such as their timely arrivals to the garage on Easter Sunday." *Id.* at 38. The court thus concluded that the newly discovered evidence did not undermine confidence in the verdict.

Jackson contends the district court failed to properly weigh the significance of the newly discovered evidence. He insists that Quintana has now been exposed as a perjurer and contends that, without his testimony, the government cannot meet its burden of proof. The falsity or inaccuracy in Quintana's testimony is troubling. But Jackson clearly exaggerates the significance of Quintana's misstatements. That is, even assuming Quintana was wrong about the date in March when he met Guzman and agreed to transport the marijuana to Cleveland, the undisputed fact is that Quintana *did*

transport the marijuana to Cleveland and deliver it to Jackson's garage. And even assuming "the boss" whom Quintana encountered with Guzman in Tucson was not in fact Matthews, the undisputed fact is that Matthews and Jackson *did* arrive at the warehouse, in concert, shortly after Quintana arrived with the load of marijuana, and *did* appear to cooperate with Quintana's attempt to deliver his cargo. And even assuming Quintana had in fact been to Cleveland in February and/or early March, instead of or in addition to a visit in January, this inaccuracy would appear to have been designed only to conceal or diminish Quintana's own involvement rather than to inculpate Jackson. That is, the fact that Quintana had previously come to the Cleveland area in February and/or early March hardly tends to exonerate Jackson in relation to his own conduct as observed by the arresting officers on March 27, 2005.[2]

In other words, none of the newly discovered revelations alter or undermine the six considerations identified by the district court as representing sufficient evidence justifying the jury's reasonable inference of Jackson's guilt. The district court's assessment that the newly discovered evidence does not undermine confidence in the verdict thus appears to be sound and has not been shown to be a clear abuse of discretion. In relation to co-defendant Matthews' identical new trial motion, another panel of this court affirmed the district court's conclusions that the newly discovered

---

[2]Yes, the discovery that Quintana had been to Cleveland in February and/or early March *could* be deemed to buttress Jackson's theory that Quintana had previously been to Jackson's garage to have his truck washed. And such a prior visit *could* have given rise to a familiarity with the area that Quintana *could* have relied on to identify the Aurora Road warehouse as the marijuana delivery destination. Yet, as the district court observed, Jackson's theory had precious little factual support. Acceptance of the notion that Quintana falsely identified Jackson's garage as the delivery destination would still require pure speculation, which is hardly sufficient to undermine the reasonable inference that Jackson knew what Quintana's load contained as he helped unfasten it from the trailer.

evidence was merely cumulative and impeaching and would not have resulted in an acquittal. *Matthews*, 298 F. App'x at 466-67. Again, there is no reason for us to reach a different conclusion in this case.

### III. CONCLUSION

Accordingly, we reject both of Jackson's claims of error. We uphold the district court's denial of the motion for new trial and the judgment of conviction is **AFFIRMED**.